(4 App. Div. 46.)

## NIENDORFF v. MANHATTAN RY. CO.

(Supreme Court, Appellate Division, First Department. April 17, 1896.)

1. EXCESSIVE DAMAGES—PERSONAL INJURIES.

It appeared that after plaintiff had purchased a ticket, and dropped it into the proper box at the station, a misunderstanding arose between him and defendant's gateman, who insisted that plaintiff had not deposited any ticket; that as plaintiff started to board the train the gateman pulled him back, struck him in the face, and kicked him in the groin; that plaintiff was compelled to undergo a painful surgical operation at the hospital, where he remained for six weeks, suffering more or less pain; and that such pain was likely to continue, in some degree, in the future. *Held*, that a verdict for $5,000 was not so large as to warrant the conclusion that the jury was influenced by partiality or prejudice.

2. EXPERT TESTIMONY—HYPOTHETICAL QUESTION.

In an action for personal injury, the expert testimony of a physician, limited to deductions from plaintiff's physical condition which the witness had personally observed, and which he had previously described to the jury, was properly received, though not given in response to a hypothetical question.

3. TRIAL—OBJECTIONS TO EVIDENCE—MOTION TO STRIKE.

A motion to strike out a witness' direct testimony, which he so modified on cross-examination as to render it of little value, was properly denied; it being for the jury to determine what consideration, if any, should be given it.

4. SAME—INSTRUCTION TO DISREGARD.

Where a witness' direct testimony is entirely destroyed by his cross-examination, an instruction to disregard the direct testimony is proper.

5. WITNESS—EXAMINATION—DISCRETION OF COURT.

To permit a witness for plaintiff to be re-examined after defendant has rested is discretionary with the court.

6. SAME—REBUTTAL.

Where, after plaintiff had proven his injury and the grave symptoms which naturally followed, defendant introduced evidence to show that the symptoms resulted from an old malady, and not from the injury, it was not an abuse of discretion to allow plaintiff, after defendant had rested, to recall his physician in rebuttal.

7. PERSONAL INJURIES—DAMAGES—LOSS OF TIME.

Though the amount of money actually lost by plaintiff while incapacitated for work, as a result of personal injuries, is not shown, he is entitled to nominal damages for his loss of time, on proving such loss.

8. SAME—INSTRUCTIONS.

An instruction that the jury may consider plaintiff's loss of time, as well as his pain and suffering, is not erroneous, though the amount actually lost by him while incapacitated for work was not shown, if no request was made to charge that the award should be limited to nominal damages, and there is nothing to show that the damages awarded for loss of time exceeded a nominal sum.

Appeal from court of common pleas, trial term.

Action by Otto Niendorff against the Manhattan Railway Company to recover damages for personal injuries inflicted by defendant's servant. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Julien T. Davies and Joseph H. Adams, for appellant.
Clarence Lexow and George M. Mackellar, for respondent.

BARRETT, J.  The plaintiff was a waiter in a Franklin street restaurant.  Upon the 12th of September, 1891, after an unusually protracted service, he started to go home.  This was about half past 2 o'clock in the morning.  He thereupon took one of the defendant's trains at the Canal street and Bowery station, intending to get off at Thirty-Fourth street.  But he fell asleep while the train was proceeding uptown, and only awoke when it reached the Ninety-Ninth street station, where he got off.  Thereupon he purchased his ticket for a fresh passage downtown, and dropped this ticket into the proper box.  A point is made that the plaintiff, upon cross-examination, stated that he threw this ticket at the box, and that it may have fallen upon the floor of the platform.  This point, however, is of but little moment, as it is clear that the defendant's agents were aware of the purchase, and actually received the ticket for cancellation.  There is, in fact, but little doubt that the ticket was placed in the box in the usual way.  A misunderstanding upon the subject arose between the plaintiff and the defendant's gateman.  The gateman required the plaintiff to purchase another ticket, and the plaintiff insisted that he had already purchased one, and that the gateman would find it in the box, if he looked there.  Upon the arrival of a downtown train an altercation ensued between them.  The plaintiff started to get on the train, and the gateman sought to prevent his doing so.  At this point the gateman resorted to violence; seizing the plaintiff by the collar, and throwing him backward.  The plaintiff again and again protested that he had paid his fare, and told the gateman that, if he still doubted him, it would be better to get a police officer.  The gateman replied that he was the officer, and followed this remark up with a violent attack.  He struck the plaintiff in the face, and kicked him.  He tried to throw him from the platform, down upon the railroad tracks.  The plaintiff defended himself as best he could, but without much success, for he was severely injured before the gateman was finally dragged away by another of the defendant's employés.  It is not necessary to detail the plaintiff's injuries.  The severest injury undoubtedly resulted from kicks in the abdomen and groin.  The groin at once commenced to swell.  This swelling increased day by day, notwithstanding local treatment.  A few days later the plaintiff went to a hospital, where he was put to bed and treated.  But the treatment was inadequate to relieve the increasing symptoms, and finally he was compelled to undergo a painful surgical operation.  He remained under treatment at the hospital for six weeks, suffering more or less pain all the time.  The jury awarded the plaintiff $5,000 damages.  We have examined the case carefully, and, upon the whole, we can see no reason for disturbing the verdict.  There was a conflict of testimony with regard to the altercation, but we cannot say that the verdict was against the weight of evidence.  The plaintiff's story seems more natural and credible

than that of the defendant's witnesses. It is fairly corroborated, too. The story told by the gateman is overdrawn. He was, on his own showing, altogether too civil, too gentle, too entirely on the defensive. And the plaintiff is pictured as too coarse, too brutal too wantonly aggressive. His story was improbable, too. He says there was, in the end, no question about the plaintiff's fare, that he knew it had been paid, and that the real trouble was with two other passengers. Thus, he would have us believe that there was no attempt to prevent the plaintiff from getting on the train, and that the altercation was initiated by the plaintiff's causeless, senseless, and wholly wanton attacks upon him. We think that the weight of credible testimony was with the plaintiff, as to the occurrence. As to the damages, while they were certainly liberal, we cannot say that they were excessive. The injury was severe, the operation painful, and the suffering great. Whatever the doctors may think about it, the fact remains that the plaintiff's suffering has, in a degree, continued, and is likely to continue; that there is a scar upon his groin; and that he is not the same man, physically, that he was before the injury. We need not detail the testimony on this head. Suffice it to say that it fairly supports the verdict. The amount is not so large as to warrant the conclusion that the jury were influenced by partiality or prejudice, or by any other improper motive. Considering the plaintiff's condition in life, and the nature of the injury, we might have been better satisfied with a somewhat smaller award; but our discretion does not supplant that of the jury, and we cannot say that the verdict was excessive, within the settled rule upon that head. We will now consider the various exceptions taken by the appellant:

1. The testimony of the plaintiff's expert was objected to because it was not given in response to a hypothetical question. This expert, however, was the very physician who performed the operation in the hospital. He distinctly stated that his expert testimony was based upon the facts which, as a physician, he had previously narrated to the jury. "I am speaking now," he said, "of the condition which I have already described to the jury. Question. And that exactly? Answer. Yes, sir." It was unnecessary to repeat the physician's testimony in the form of an hypothesis. One of the purposes of a hypothetical question is to prevent the expert from giving his opinion upon facts known to himself, or mentally assumed by him, but not communicated to the jury. Here the expert's opinion was given upon the exact physical condition which he had observed and described. He emphasized this observation and description throughout. Thus, the jury heard every fact upon which the opinion was based. The opinion was not based upon other testimony in the case, nor upon hearsay, nor upon any foreign assumption. It was strictly limited to deductions from the physical condition which the expert had personally observed, and which, as a witness, he had fully described. Under these circumstances, it was not necessary to group the facts thus narrated into the form of an hypothesis. That would have been an idle ceremony. It

was clearly competent for the same person, as an expert, to give his opinion upon the facts which, as a physician, he had observed and narrated.

2. There was no error in refusing to strike out that part of the physician's direct testimony where he stated that there may be future pain following the plaintiff's condition. The contention is that the witness entirely receded from this position upon his cross-examination. Such, however, is not the fact. He undoubtedly modified his views on that head, and it may be that this modification rendered the direct testimony of but little value with respect to future pain. But that was no reason for striking it out. It was properly in the case, and it was for the jury to say, after hearing the cross-examination, what consideration, if any, it merited. The utmost that the defendant was entitled to, even if the cross-examination entirely destroyed the direct testimony, was an instruction to disregard the latter. Gawtry v. Doane, 51 N. Y. 84; Platner v. Platner, 78 N. Y. 90; Pontius v. People, 82 N. Y. 339. The defendant made no such request, and that which it did make was properly denied.

3. The defendant also objected to the court's permitting the plaintiff to recall this physician as an expert after it had rested. This was a matter of discretion, and the discretion was not abused. Indeed, the court expressly limited the plaintiff, in this examination, to rebutting the testimony of the defendant's expert. The plaintiff was not bound to forestall the defense. He proved the injury, and the grave symptoms which immediately and naturally followed. The defendant then attempted to prove that these symptoms resulted, not from the assault, but from an old malady. It then became entirely proper to permit the plaintiff to meet this new aspect of the case, and to show that the old malady had nothing to do with the injury. We may add, upon full consideration of the careful analysis which the defendant presents of this expert's testimony, that in our judgment the malady in question had nothing whatever to do with the condition of the plaintiff's groin, and that the operation already referred to was necessitated solely by the kick which he received in that part of his body from the defendant's employé.

4. The remaining questions presented by the appellant are trivial, and without merit. The learned judge stated the general rule upon the subject of damages when he charged that they might take into consideration the plaintiff's loss of time, as well as his pain and suffering. It is true that what the plaintiff actually lost in money while he was laid up was not proved. But, having proved the loss of time, he was at least entitled to nominal damages. Leeds v. Gaslight Co., 90 N. Y. 26; Feeney v. Railroad Co., 116 N. Y. 375, 22 N. E. 402; Baker v. Railroad Co., 118 N. Y. 533, 23 N. E. 885. The defendant did not request the court to charge that the award on this head should be limited to nominal damages. They confined themselves to a general exception to his fair statement of the ordinary rule, and we have no reason to believe, from aught appearing on the record, that the damages for loss of time exceeded the nominal sum which the jury were authorized to award. The criticism upon the

statement of the trial judge that the jury could not give the plaintiff more than $10,000, because that was the limit of his claim, is hypercritical. There was not the slightest intimation that they should give the plaintiff $10,000, or any other sum. There was no suggestion, even, of an opinion upon the subject. In fact, the observation was in the defendant's interest, and was called for by a request "not to deal with the case as if it were their own, nor to give the plaintiff such a sum as they would like to have themselves under the same circumstances." To this the court replied: "That is the fact. You are to give him what he ought to have." The plaintiff's counsel then asked the court to charge that, if they found for the plaintiff, they were entitled to find for any sum up to $10,000, the amount claimed. And the court said, "You cannot give more than $10,000, because that is the limit of the plaintiff's claim." The present criticism upon this statement is evidently an afterthought. It did not, at the trial, affect the defendant's counsel as being specially momentous; for the only observation which then followed the statement was that, as the pleadings were not in evidence, the counsel excepted to its being stated. The idea that 12 ordinary citizens were influenced by such a remark is farfetched. The jury are not such hothouse plants as unsuccessful appellants would have us believe.

There are no other questions calling for special consideration, and the judgment and order denying a motion for a new trial should be affirmed, with costs. All concur.